IN THE MATTER OF THE ALLEGED UNPROFESSIONAL AND UNETHICAL CONDUCT OF BART R. BOYLE, A MEMBER OF THE BAR OF THE STATE OF NEW JERSEY, PRACTICING IN HUDSON COUNTY.

Argued April 18, 1955—Decided May 9, 1955.

*Mr. Charles W. Broadhurst* argued the order to show cause.

*Mr. Joseph A. Davis* argued in opposition to the order to show cause.

The opinion of the court was delivered by

BURLING, J. ▆ Because of the education and training of members of the legal profession and the opportunities inherent in their practice, they very clearly have a duty and a challenge to exert a wholesome influence by fostering high ideals.

▆ Good government is dependent upon the high standards of morality which men and women recognize as such. We are informed by the preamble to the *Canons of Professional Ethics* that the enumeration of particular duties is a general guide and "should not be construed as a denial of the existence of others equally imperative." *Cf. In re Genser,* 15 *N. J.* 600, 602 (1954). "Concern must be not with whether an act is subject to discipline by an ethics committee but whether such behavior is that which the conscience directs." *Henry S. Drinker, The Ethical Lawyer, 7 Univ. of Fla. L. Rev.* 375 (1954). Constant emphasis upon the wholesomeness of law observance tends to reduce the necessity of law enforcement.

▆ The New Jersey Constitution of 1947 reposes in this court "jurisdiction over the admission to the practice of law and the discipline of persons admitted." *N. J. Const.* 1947, *Art.* VI, *Sec.* II, *par.* 3. "This duty is imposed for the protection of society and to uphold a respected evaluation and the traditions of the legal profession." *In re Genser, supra*

(15 *N. J.*, at *p.* 607). The necessity for the resort to disciplinary proceedings is to be regretted but the eagerness of the vast number of responsible and creditable attorneys who earn respect by their integrity of character and industrious application of their knowledge and talents makes the number of such proceedings proportionately negligible. It has been said that the "ethical lawyer" is "one whose preparation, equipment, character, and conduct are always such as to reflect honor on the noble profession of which he is a member." *Henry S. Drinker, The Ethical Lawyer, ante* (*7 Univ. of Fla. L. Rev.*, at *p.* 375). Nevertheless when the occasion does arise, the attorneys and the court should be the first to recognize it and act to maintain respect.

In a presentment filed by the Ethics and Grievance Committee for Hudson County, Bart R. Boyle was charged with unprofessional and unethical conduct. *R. R.* 1:16-4(*h*). An order to show cause why he should not be disbarred or otherwise disciplined was issued by this court. Boyle, a resident of Bayonne, New Jersey, was admitted to the Bar in this State in January, 1927, as an attorney-at-law. At the principal times involved in this matter he was an employee of the Clerk of Hudson County and was charged with supervision of Chancery Division duplicate files.

This case devolves from the wisdom of non-commingling of other peoples' money with one's own. This salutary principle is expressed in *Canon* 11 in the following language:

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

Perhaps this rule should expressly state that a special bank account should be maintained as a repository for such trust moneys.

The salient facts of this matter are not in material dispute. It appears that the Clinton Milk Company of Newark, New Jersey, (hereinafter called Clinton) claimed the sum of $13,147.46 from Mays Dairy Company (hereinafter called

Mays) "for goods sold and delivered" to Mays prior to February, 1951. In January 1951, Boyle, as an attorney-at-law of New Jersey, represented Mays on a sale of assets to Mays Dairy, Inc. Clinton brought suit. There was testimony that at Boyle's "suggestion" another attorney (an attorney whose offices Boyle was permitted to use and on whose office door he kept his name) represented Mays in this initial proceeding. Earlier in the proceeding Boyle, through counsel, admitted his position was "that he retained" his office associate "to act in his behalf in the matter."

A settlement was reached, resulting in voluntary dismissal of the action. Clinton was paid $8,244.66, and as a part of the settlement Mays assigned all of its assets, cash in bank and accounts receivable to Boyle "for the following purposes:

a. That the said Bart R. Boyle collect all monies or other payments due to May's Dairy, Inc.

b. That the said Bart R. Boyle hold all the monies in escrow for the benefit of creditors of May's Dairy Company, Inc. who prove their claims to the satisfaction of May's Dairy Company, Inc. or by judgment secured against it in any Court, and, upon proof or judgment as above set forth, to pay said claims or judgments, and to pay over after all claims and judgments are paid as aforesaid, the balance remaining in his hands to May's Dairy Company, Inc. or its nominee or assignee as may further appear."

The escrow agreement was signed by respondent under the statement:

"I, Bart R. Boyle, hereby agree to act as escrow agent according to the terms and conditions set forth in the above agreement."

The stipulation entered into between Clinton and Mays provided that no costs or counsel fees should be paid "out of the sum of $4,902.80 to be held in escrow by the said Bart R. Boyle, now or at any time hereafter." Boyle received $3,400 under the escrow agreement.

On April 2, 1951 Boyle deposited a Mays check (payable to Boyle) for $2,400 in the Broadway National Bank of Bayonne, New Jersey, in his own name. He received another

Mays check, for $1,200, on April 6, 1951, and deposited it in the same account. This check was returned by reason of insufficient funds in the Mays bank account, and a charge of $2.65 was made against Boyle's account by the Broadway National Bank (in addition to the bad check). On April 23, 1951, Boyle deposited a $1,000 check from Mays. On April 23, 1951 Boyle withdrew $1,000. He placed this money, with $2,400 of this own, in an envelope marked with his name, in his office associate's safe. Thereafter he treated the Broadway National Bank account as his own.

Clinton then commenced an action in the Hudson County Court to establish its claim of $4,902.80 against Mays. The presentment charged that Boyle retained another attorney to defend this suit for Mays. Boyle's testimony was that Mrs. May (one of the members of the original Mays firm) selected this attorney. A judgment of dismissal of the action was reversed by the Superior Court, Appellate Division, certification was denied by this court, and final judgment was entered in favor of Clinton in the County Court for $6.042.32, on September 15, 1952.

Subsequently, Boyle, pressed for payment by Clinton, filed in the Superior Court a statement of account as escrow agent, claiming allowances for disbursements of $1,192.05, made by him for expenditures relating to Mays' defense of the Clinton suit and the subsequent proceedings on appeal. The Superior Court disallowed the disbursements and on September 13, 1954 ordered Boyle to pay the funds in his possession to Clinton. Boyle resorted to evasive tactics to avoid payment, and appealed the order. Subsequently a settlement was reached whereby Boyle was required to, and did, pay to Clinton "Thirty-one hundred and odd dollars" and the appeal was dismissed.

Boyle defended his conduct by averments that he was impelled thereto by belief in the alleged defense of "my clients, as it were, or my principal," sympathy for Mrs. May and her partner, Mrs. Seeman, and their financial condition. And he indicated he was in part urged on by motives of personal resentment at the efforts made by Clinton's counsel to obtain

the moneys claimed by Clinton from Mays. However, he admits that the record of these disciplinary proceedings "clearly evinces that the respondent now realizes that he acted most unwisely, used poor judgment and was mistaken in his concept of the latitude permitted by him by reason of his office as escrow agent."

■ The looseness with which the money of others was handled in the present matter was misconceivably justified in the mind of the respondent, Boyle, because of his allegation of a sentimental feeling toward his "principals," the proprietors of the former Mays business. The assumption of the expressly defined duties of an escrow agent cast on Boyle the obligation to faithfully perform that contract. "All fiduciaries are held to a duty of fairness, good faith and fidelity, but an attorney is held to an even higher degree of responsibility in these matters than is required of all others." *In re Honig,* 10 *N. J.* 74, 78 (1952); *In re Genser, supra* (15 *N. J.,* at *p.* 607).

*Canon* 15 expressly provides:

"* * * it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. * * *"

We find that Boyle did not strictly commingle funds held by him in a fiduciary capacity with his own, but his conduct placed those funds in jeopardy of confusion with his own and therefore violated the spirit of *Canon* 11, *supra.* It is not necessary to determine whether the relationship of attorney and client existed in fact. Boyle's conduct exemplified neither candor nor fairness in dealing with other attorneys, hampering as it did the machinery of justice in the normal collection of a judgment of a court of law of this State. There was a mitigating circumstance in that the escrow funds were kept separate and, after the dispute as to the disbursements therefrom was settled, were paid to Clinton as required by the escrow agreement.

■ At the oral argument of this matter the respondent's counsel admitted Boyle was guilty of unprofessional conduct. His theme was that the nature of the same under the circumstances of this case did not warrant action by the court beyond a reprimand. In this we concur.

*For reprimand*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.