IN THE MATTER OF ELSIE L. WHITE, AN ATTORNEY AT LAW OF NEW JERSEY.

Argued May 20, 1957—Decided June 20, 1957.

Mr. *William E. McGlynn* argued in support of the order to show cause.

Mr. *Anthony T. Augelli* argued the cause for respondent (*Messrs. Milton, McNulty & Augelli*, attorneys).

The opinion of the court was delivered by

WEINTRAUB, J.   The Ethics and Grievance Committee for Hudson County filed a presentment charging respondent with violation of Canon 11 which reads:

"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

Mrs. Theresa M. Bravante, through her cousin, a New York lawyer, retained respondent to handle a malpractice

case against a dentist. The claim was settled for $4,500, and two settlement checks totalling that sum were endorsed by Mrs. Bravante and deposited by respondent. The nub of the case is whether Mrs. Bravante agreed, as respondent asserts, to permit respondent to use Mrs. Bravante's share of the settlement for a brief period to meet some pressing obligations, or whether, as Mrs. Bravante says, the check she received was postdated solely to permit the settlement checks to clear. Two to three months in fact transpired before Mrs. Bravante was paid in full, but if respondent's version is accepted, there is nothing in the record to indicate that her representations as to the expectancy of other funds were anything but honestly made.

Upon depositing the settlement checks, respondent promptly paid fees due to two doctors, the New York forwarder, and local counsel respondent had engaged to try the case. Thus the sole party to whom payment was delayed was the client.

That respondent was injudicious in seeking the arrangement she claims, and to boot without a written statement of it, cannot be gainsaid, and with this respondent now agrees. But the issue is not whether respondent was foolish, but rather whether she appropriated moneys of her client to her own use. The charge is a very serious one.

The record presents a close factual question. Respondent urges that the payments she made to others recited above evidences the integrity of her testimony, for if her client had not agreed to the delay, the logical course would have been to defer payment at least to the other attorneys. This circumstance is perhaps equivocal since continued good relations with other attorneys could loom larger than concern with a transient client. She states, and we have no reason to question it, that she could have borrowed from her family to tide her over what seemed to be a brief period of financial strain. At any rate, a doubt as to her guilt is engendered by Mrs. Bravante's version of the crucial conversation. The check to Mrs. Bravante was drawn on September 8, and dated September 17. Mrs. Bravante's testimony reads:

"Q. And Miss White asked you not to deposit it until certain checks had cleared?

A. That's right. She told me to hold it two weeks, or so, which I told her I'd give her the benefit—I didn't say the benefit of the doubt—I said, 'would it be all right if I held it longer?' which I did. And I deposited it October 5."

This testimony reflects something more than a request to wait only until the settlement checks cleared the bank.

A careful examination of the testimony leaves us in doubt. The doubt is heightened by respondent's record of 19 years of practice without blemish, a record to which the committee itself invited our attention. Respondent is entitled to the benefit of that doubt. *Drinker, Legal Ethics* (1953), *p.* 46. See also *In re Gavel,* 22 *N. J.* 248, 262 (1956) and *In re Greenstone,* 2 *N. J. Misc.* 64 (*Sup. Ct.* 1924).

Respondent's testimony does, however, reveal infractions in other transactions of the provision of the canon forbidding commingling of funds. She states she does not maintain a trustee account because the bulk of her work is in workmen's compensation and matrimonial fields, in which the checks she receives are entirely for her own fees. She says her negligence work, which results in the deposit by her of checks in which clients have an interest, runs but some six or eight cases a year. Nonetheless, the canon must be observed. *In re Gavel, supra* (22 *N. J.,* at *page* 264). It is designed to assure the client's funds and serves as well to protect the attorney from difficulties which may inadvertently beset him if funds are confused in a common account. *In re Boyle,* 18 *N. J.* 415 (1955). Hence, where a check includes the interests of both the client and attorney, it should be deposited in a special account for the funds of others, and not in an account which the attorney uses to meet his personal or professional expenses. Our finding hereinabove that Mrs. Bravante did consent to respondent's personal use of the money of course carries with it the conclusion that the deposit of the settlement checks in respondent's personal account did not constitute commingling of funds belonging to the client. We need not stop to con-

sider whether such commingling occurred as to the moneys payable in this case to the doctors or the other attorneys. It is sufficient to say that the respondents testimony discloses commingling in other matters; and although respondent's infractions of the canon did not involve overreaching of a client or other additional impropriety, nonetheless the naked violations themselves require that she be reprimanded. An order accordingly will be entered.

*For reprimand*—Justices HEHER, OLIPHANT, BURLING, JACOBS and WEINTRAUB—5.

*Not guilty*—Justice WACHENFELD—1.