IN THE MATTER OF VICTOR N. BARON, AN ATTORNEY-AT-LAW.

Argued September 9 and November 12, 1957—
Decided December 16, 1957.

Mr. *Walter N. Read* argued the cause for the Committee.

Mr. *Louis B. LeDuc* argued the cause for the respondent.

The opinion of the court was delivered by

WACHENFELD, J. This disciplinary proceeding was instituted by a presentment from the Camden County Ethics and Grievance Committee. The initial return of the committee charged the respondent with violating *Canon* 11 of the *Canons of Professional Ethics,* principally by failing to report and account promptly for funds of clients coming into his possession. The committee recommended the issuance to respondent of an order to show cause why he should not be disciplined.

We remanded the case to the committee for further investigation and findings of fact. New testimony was taken and a supplemental presentment filed. This instrument made the additional charge that respondent had commingled his own and clients' moneys in a so-called "escrow" account.

In 1955 Baron was retained by Harriet C. Steelman and her two sisters, minority stockholders in a family corporation known as the White Star & Pitman Laundry, Inc. They brought a claim against the majority stockholders for mismanagement of corporate affairs. At or near the conclusion of the litigation, a settlement was reached. Baron's clients agreed to sell their stock to the corporation for the sum of $12,500, payment to be made in two installments, the first to be held in escrow until the second installment was received.

The first check in the amount of $5,000 was dated January 25, 1956, drawn to the order of "Victor N. Baron, Attorney," and promptly deposited in his attorney's or escrow account. The respondent likewise received and promptly deposited in the same account a second check, dated March 1, 1956, in the sum of $7,500. The stock certificates were endorsed and delivered to the representatives of the corporation, releases were executed, and the settlement thus consummated. Baron's fee was modest, $1,500 including all expenses.

On March 9, 1956, Baron sent a check for $1,500, drawn on his escrow account, to each of his three clients. Therefore, as of March 9, he had paid his clients $4,500 of the

$5,000 to which they were entitled under the first install-ment. However, he still owed $7,500, the amount of the second installment, plus the $500 balance left over from the first installment, less his fee of $1,500, or a total sum of $6,500.

Approximately two or three weeks thereafter, Baron drew three $1,000 checks on his escrow account and sent one check to each client. These were not paid, however, ap-parently because they were incorrectly drawn. When Baron was made aware of this situation, he immediately wired sufficient funds to cover the checks to the banks in which his clients had deposited them. But evidently this money did not come from his escrow account, since at no time dur-ing the period from March 14 to April 18, 1956 was his balance ever large enough to honor the checks.

Baron testified he had intended to remit the entire sum owing to his clients at this time, but that a telephone call to his bank had revealed his escrow account to be substan-tially lower than reflected in his records. Both he and his secretary attributed this difference to the fact that his check books and bank statements were in the hands of accountants due to certain difficulties encountered in his office. Consequently, the secretary was required to maintain an informal running account in a stenographer's notebook. They testified that upon examination of this account it showed certain arithmetical errors and, in particular, the complete omission of a $3,900 deduction which should have been made for a check which Baron drew for business purposes in January of 1956.

Baron stated that after learning of this deficiency, he tried to stop payment on several personal checks but was unable to do so because they had already cleared. Ap-preciating the trouble he was in, Baron met the situation head-on without resorting to subterfuge. He went directly to his clients, explained the deficiency, saying it had been caused by a faulty bookkeeping system, and asked for time in which to pay the $3,500 still due.

His clients, who were "very, very nice," accepted his explanation and readily agreed that the $3,500 due could be paid with interest over an indefinite period of time. This form of restitution was undertaken and the full debt has now been discharged.

*Canon* 11 of the *Canons of Professional Ethics* of the American Bar Association is most precise:

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

The committee found as a fact that there had been a commingling of funds and that an examination of respondent's accounts made it most difficult to ascertain exactly what had occurred. Some of the details may be obscure, but there is little doubt that Baron's personal funds were commingled with those of his clients and that the amount supposedly in escrow was impaired by reason of funds being withdrawn and used for personal matters. In fact, technical violations of the provisions of the canon are admitted by counsel for the respondent. However, he insists the record shows no corrupt misappropriation by Baron of his clients' money. The record indicates quite clearly a willful violation with knowledge that he was improperly using trust moneys.

The query remains as to what disciplinary action is warranted.

There are strong mitigating circumstances in respondent's behalf, but to narrate some of them in detail would perhaps be a disservice because their recitation might be misconstrued. It suffices to say that during the period in question confusion and unusual office operating difficulties were created through no fault of respondent's.

The totality of the evidence presents many favorable aspects for which he should be given consideration. He loyally and skillfully served the best interests of his clients. Although he found himself in debt to the extent of approxi-

mately $65,000 as a result of an unfortunate business venture, he refused to resort to bankruptcy but undertook the difficult task of paying his creditors in installment payments. Despite this, he did not gouge his clients here on his fees, although there had been an ardent and successful prosecution of their claims. He still holds the trust and confidence of those he inconvenienced and has at all times been frank and forthright in his disclosure to them of his difficulties. His good faith is demonstrated by the complete restitution of the moneys involved, with interest.

The composite of facts contained in the record shows he was caught in a web of financial difficulties. He did not intend to appropriate the money permanently to his own use but hoped sufficient funds would materialize to tide him over the emergency he had encountered. He fondly expected a replenishment of his account in time to meet his obligations.

The hoped-for pot of gold was not at the end of the rainbow, however, and his resultant embarrassment is evident from the presentment returned against him. It is but another demonstration of the importance of the canon involved and the difficulty which usually ensues when its mandates are violated or trespassed upon.

■■ Each disciplinary matter must be determined on its own facts and circumstances, and the difficulty constantly present is as to what the final disciplinary measure should be. The ultimate objective is the protection of the public, the purification of the bar and the prevention of a reoccurrence. In the case *sub judice,* our conclusion is that a suspension for six months is the appropriate *quantum* of punishment.

Accordingly, the respondent is suspended from the practice of law for a period of six months and until the further order of this court.

*For suspension for six months*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*Opposed*—None.