IN THE MATTER OF FREDERICK E. BANNER, AN
ATTORNEY-AT-LAW.

Argued September 15, 1959—Decided October 26, 1959.

*Mr. William D. Danberry* argued the cause for the Middlesex County Ethics and Grievance Committee.

*Mr. Morris Spritzer* argued the cause for respondent.

PER CURIAM. The presentment filed found respondent guilty of unprofessional conduct by delaying the disbursement of clients' funds and by utilizing those funds for his personal purposes in the interim in violation of Canon 11: "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him." Our own evaluation of the proofs demonstrates the committee's findings to be overwhelmingly supported by clear and convincing evidence.

A brief summary of the situation will suffice. In December 1958 the clients, a husband and wife living in the State of Washington, complained to the committee of the non-receipt of proceeds of a sale of their real estate in New Jersey in which they had been represented by respondent and which had been closed on June 28, 1957. They had not been present at the closing by reason of their distant residence and respondent was at that time paid $3,437.09, representing the balance of the purchase price, by the buyer's check to his order as attorney. A few days later he deposited all except $100 (said to represent his fee) in a checking account standing in the name of himself or his secretary and designated as "Real Estate Account," which purported to constitute his trust account for handling other people's money. He then paid the amount due the broker for commission. The clients were promptly entitled to remittance of the balance, computed by respondent, after deduction of charges and disbursements, to amount to $2,557.74. They did not receive it until just after this complaint was filed, almost a year and a half later.

It is admitted that respondent withdrew and personally used these moneys from time to time during this period. He contended he was privileged to do so because he had secured his clients by placing an equivalent amount of cash in an envelope in the case file, although he had completely forgotten that fact until he found the currency there after

the filing of the complaint. The committee properly found this explanation to be factually unsubstantiated by believable proofs. He sought to excuse the delay by claiming that he issued checks on this trust account for the amount due on three occasions, in September 1957, April 1958 and October 1958. The latter two were after demand by his clients. He never even attempted to deliver the last check. The reason given for the failure is unworthy of credence when it is noted that the account contained insufficient funds to cover it when drawn and for almost a month thereafter. The first two checks were said to have been mailed to the clients in Washington. The latter claimed they were not received. The letters were never returned as undelivered nor were the checks ever presented for payment by anyone. Respondent did not stop payment on either after he was advised by his clients of their non-receipt. The September check would not have been good until more than a month after its date because of the low balance in the account. It is difficult to be convinced that these two checks were ever actually mailed. The fact that the complainants ultimately received their money cannot condone either the unwarranted delay in making payment or respondent's personal use of it in the interim.

"The funds in the hands of an attorney that belong to a client or others must be kept inviolate. For obvious reasons, the strictest rules of conduct apply here and every presumption works against the wrongful user." *In re Gavel,* 22 *N. J.* 248, 264 (1956). See also *In re Boyle,* 18 *N. J.* 415, 420 (1955); *In re White,* 24 *N. J.* 521, 524 (1957); *In re Baron,* 25 *N. J.* 445 (1957).

Even a cursory examination of respondent's check book and the bank ledger sheets for the account during the period in question discloses extreme carelessness in its handling and an apparent lack of appreciation of the fundamentals required to assure fulfillment of the duty so clearly imposed by the canon. Deposits were not entered in the check book. Perhaps a majority of the stubs, including a large number

indicating checks drawn frequently and in substantial amounts to respondent or members of his family, contain little or no description of the payment or its relation to trust moneys deposited. There are frequent notations of counter-checks with no further information whatever. The ledger sheets show innumerable checks charged for which there are no entries in the check book. No running balance was kept and no reconciliation with bank statements is indicated. In short, in the absence of other records (and respondent's testimony does not show that he kept any), there was no way for him to tell how much money was in the account at any time, let alone to whom it belonged.

It is not inappropriate in this connection to point out that compliance with the obligation and avoidance of embarrassment and difficulty can only be made certain by adherence to substantially the following minimum procedures: the full amount of all checks made payable to an attorney in his fiduciary capacity, as well as all cash similarly paid him, should be immediately deposited in the essential separate account used for that purpose alone. (If the average balance thereof is not sufficient to avoid the imposition of service or other bank charges for maintenance of the account, the attorney should deposit and retain therein a sufficient amount of his own moneys so that such charges may be covered at all times.) Any portion of such moneys representing fees of the attorney or repayment of disbursements advanced should be withdrawn as soon as he is entitled to do so by check payable only to his individual order. It is unwise for the attorney to withdraw from the trust account moneys to which he is entitled and use them for his own private or business purposes without first depositing them in his regular business bank account. Full and accurate records must be kept, at least in the check book if not separately as well, describing deposits and checks drawn and clearly indicating the total balance in the account at all times as well as to what persons the same belongs and in what respective amounts. It is, of course, absolutely im-

perative that funds belonging to clients or others be disbursed in accordance with directions immediately when payable and prudence dictates the making of all such payments by check to the order of the person entitled thereto.

██ Mindful that the ultimate objective of disciplinary measures is "the protection of the public, the purification of the bar and the prevention of a re-occurrence" considered in the circumstances of each individual case (*In re Baron, supra,* 25 *N. J.* at *page* 449), we conclude that respondent should be suspended from the practice of law for a period of one year and until the further order of this court. It is so ordered.

*For suspension for one year*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*Opposed*—None.