64 N.J. Super. 457 (1960)
166 A.2d 592
NELSON G. GROSS, TRUSTEE IN BANKRUPTCY OF B & R DECORATORS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
CARMINE GRIMALDI, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT,
v.
WILLIAM S. GRIMALDI, EXECUTOR OF THE ESTATE OF LAWRENCE BERTOLA, DECEASED, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1960.
Decided December 20, 1960.
*459 Before Judges CONFORD, FREUND and KILKENNY.
*460 Mr. Carmine Grimaldi, defendant and third-party plaintiff-appellant, argued the cause pro se.
Mr. David A. Pressler argued the cause for plaintiff-respondent (Mr. Harold S. Okin, attorney; Mrs. Sylvia B. Pressler, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff, the duly authorized trustee in bankruptcy of B & R Decorators, Inc., a New Jersey corporation, instituted the present suit in the Bergen County District Court against Carmine Grimaldi, an attorney of this State, for alleged improper diversion of $750, representing funds of the bankrupt corporation. Trial by jury resulted in a verdict in plaintiff's favor, from which defendant takes this appeal. As no stenographic record was made of the trial proceedings, we consider this appeal on a settled state of case. R.R. 1:6-3.
The late Lawrence Bertola was president and sole stockholder of B & R. The corporation desiring to file a voluntary petition in bankruptcy, Bertola, on March 28, 1958, retained defendant Grimaldi for that purpose, visiting the latter at his office. A corporate check in the amount of $750 was given to Grimaldi as a retainer.
On April 15, 1958 Bertola appeared at Grimaldi's office, stated that the corporation did not wish to go into bankruptcy, and asked for the return of the retainer. Bertola further told defendant that he needed the money immediately in order to meet his weekly payroll, and requested that he be paid in the form of a check drawn to his individual order. Grimaldi, not having commenced any legal work on behalf of the corporation, complied with Bertola's request and drew a check to the latter's order in the sum of $750. About a week thereafter, Bertola took his own life. The corporation subsequently went into bankruptcy, and upon discovery by the trustee that the alleged check from Grimaldi to Bertola had never been deposited to the corporation's bank account, *461 the present suit for improper diversion was commenced. Defendant filed a third-party complaint against William S. Grimaldi, executor of Bertola's insolvent estate; the executor defaulted and is not a party to this appeal.
Defendant did not deny either the existence of the $750 retainer from Bertola or his obligation to return the money when informed that his services in the matter were no longer needed. His primary defense was that he had effectively discharged his debt to the corporation by writing the check to Bertola's order. The canceled check was introduced into evidence and, with the exception of B & R's bookkeeper, who was hesitant on the matter, the identifying witnesses agreed that the endorsement on the check was that of the late Lawrence Bertola.
Plaintiff maintains, in support of his jury verdict, that the evidence upholds the conclusion that defendant breached his fiduciary duty to his corporate client by negligently drawing his check to Bertola's individual order rather than to the order of B & R, thereby permitting a diversion of the corporate funds to Bertola's individual purposes; further, that the question of defendant's reasonableness in making the payment in that manner and the issue of whether the money was ever used for corporate purposes were properly left for the jury's determination.
We are of the opinion that the judgment of the trial court must be reversed because of the misleading and incomplete nature of the judge's charge to the jury. The crucial issue at the trial was whether defendant had violated the duty owed to his client, B & R, when he drew his check to the order of Lawrence Bertola, individually. Yet the only instruction remotely bearing on this issue consisted of the trial judge's adoption of plaintiff's request No. 3, reading as follows:
"A person dealing with an agent must act with ordinary prudence and reasonable diligence and if the character assumed by the agent is of a suspicious or unreasonable nature or if the authority which he seeks to exercise is of such an unusual or improbable character, *462 as would suffice to put an ordinarily prudent man upon his guard, the party dealing with him may not shut his eyes to the real state of the case, but should either refuse to deal with him at all, or should ascertain from the principal the true intention of affairs."
In addition to the general nature of the quoted charge, lacking specific adaptation to the factual circumstances of the case, although admittedly that would not in itself be sufficient grounds for reversal, Nass v. Harris, 117 N.J.L. 427, 429 (E. & A. 1937), we consider that the instruction inadequately guided the jury in its deliberations. Having received the retainer from Bertola on behalf of the corporation, Grimaldi's relationship with B & R was that of attorney and client. Upon notification to defendant that the corporation no longer desired to go into bankruptcy, the client concededly became entitled, under their arrangement, to return of the retainer fee. But cf. Conover v. West Jersey Mortgage Co., 96 N.J. Eq. 441, 451 (Ch. 1924). There is some doubt whether at this point Grimaldi held his client's money as a fiduciary, cf. In re Boyle, 18 N.J. 415 (1955); In re Banner, 31 N.J. 24 (1959); Canons of Professional Ethics of American Bar Association, Canon 11, with the attendant degree of responsibility, or whether the relationship between them was simply that of debtor-creditor. But this is of no consequence in respect of the legal issue. Under either hypothesis the question is whether the manner of return of the funds led to their diversion from the corporation. The jurors were not adequately charged to the effect that this was the issue before them.
The question of Bertola's authority to receive the check from defendant is debated at length by the parties. But it cannot be seriously doubted that the general implied authority of a corporation president to collect outstanding accounts, Cogan v. Conover Mfg. Co., 69 N.J. Eq. 816 (E. & A. 1906), would ordinarily embrace the present factual context. Bertola's status as sole stockholder and, according to the testimony, exclusive manager of the corporation's affairs, reinforces the implication of actual authority in this instance. *463 Cf. Carlson v. Hannah, 6 N.J. 202, 212 (1951); Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 557 (App. Div. 1959), certification denied 31 N.J. 554 (1960).
However, Bertola's general authority as president of the corporation to collect obligations due his principal does not necessarily vindicate defendant's actions, either in drawing the check to Bertola's individual order or in paying the money over to him at all. It is well settled that if a third person deals with an authorized agent for a disclosed or partially disclosed principal, knowing or having reason to know that the agent is acting for his own or other improper purposes, rather than for the principal's benefit, the third person is barred from later claiming that his obligation to the principal has been discharged by the payment to the agent. Cf. Restatement, Agency 2d, § 165 (1958), especially comment (c); see 3 C.J.S. Agency § 251, pp. 180-181; § 253, pp. 184-186.
The jury should have been instructed to consider all of the alleged circumstances, including Bertola's status in the B & R corporation, his prior dealings with defendant, his asserted motives for requesting return of the check, and his stated reasons for wanting the instrument drawn to his individual order. On the basis of these considerations, and guided by an exposition of the applicable legal principles covering the responsibility of one holding corporate funds and notice of the unauthorized intentions of an agent, the jury should have been directed to determine whether or not Grimaldi's actions constituted a negligent or improper diversion of the corporation's funds.
The trial court's instruction with respect to Bertola's use of the corporate funds was also erroneous or, at best  especially in the light of the incomplete instruction on defendant's duty of care  it was misleading. The charge read as follows:
"* * * if you find in this case that the $750.00 of corporate funds received from Lawrence Bertola, as president of the corporation was in fact returned to Lawrence Bertola and applied by the latter *464 for corporate purposes in payment of salaries due to employees or any other corporate uses, and that no damage was sustained in fact by the creditors of the corporation in the manner in which defendant repaid the $750.00, then you should find in favor of the defendant that there was no unlawful diversion of corporate funds." (Emphasis added)
Construed in conjunction with an adequate charge as to defendant's duty of care in dealing with the agent of his corporate client, the quoted instruction would be proper. That is, even if Grimaldi negligently gave the funds to Bertola, if the latter in fact applied them for corporate purposes, there has been no improper diversion and no damage to the interest of the creditors, represented by plaintiff.
However, because of the incomplete reference by the trial judge to Grimaldi's duty of care, the gist of the entire charge, as given, might reasonably have been construed by the jury to be that defendant should be absolved from liability only if Bertola in fact used the $750 for the benefit of the corporation.
The latter inference is contrary to the established doctrine that when one indebted to a principal makes payment to a duly authorized agent, having neither notice nor reason to know of any improper designs on the part of the agent, the indebtedness is discharged when the agent obtains the proceeds. Cf. Doyle v. Loft, Inc., 98 N.J.L. 516, 519 (E. & A. 1923); see United States v. Unger, 159 F. Supp. 850 (D.C.D.N.J. 1958); Colorado Federal Savings and Loan Ass'n v. Beery, 347 P.2d 146 (Colo. Sup. Ct. 1959); Restatement, Agency 2d, § 178(1), (2); Annotation, 94 A.L.R. 784 (1935).
We are not unaware of defendant's failure to take specific exception to those portions of and omissions from the charge upon which we have predicated our reversal. See R.R. 4:52-1. However, we consider the errors in the instruction to be of sufficient substance to constitute plain error, R.R. 1:5-3(c), and we will therefore notice them on our *465 own account. Maccia v. Tynes, 39 N.J. Super. 1, 6 (App. Div. 1956); Ench v. Bluestein, 52 N.J. Super. 169, 176 (App. Div. 1958). Even without a request from counsel, it is essential that the court expound the legal theory of the case to the jury so that it may intelligently apply the law to the facts. Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 565-66 (App. Div. 1951).
Plaintiff asserts that the trial judge did make a proper charge on the subject of defendant's duty of care, which is not included in his settled state of the case; he requests that we order a remand for the correction of the record in that regard. But we are informed that plaintiff did request the court to make such a correction, pending the appeal, but without success. He could have applied to this court for relief, R.R. 1:6-6, made applicable by R.R. 2:6, but failed to do so at the proper time. Such a request, made on the argument of the appeal and after the completion of the appellate record, comes too late.
As a new trial is dictated for the reasons set forth above, we deem it unnecessary to examine the other alleged trial errors assigned by defendant.
Reversed and remanded for a new trial.