## IN THE MATTER OF MICHAEL L. MALANGA, AN ATTORNEY-AT-LAW.

Decided October 25, 1965.

*Mr. Frederick C. Vonhof* for the order to show cause.

*Mr. Ferdinand D. Masucci* argued the cause for respondent.

The opinion of the court was delivered

PER CURIAM. The Essex County Ethics Committee filed a presentment in which it found that the respondent, Michael L. Malanga, violated *Canon 11* of the *Canons of Professional Ethics* by appropriating to his own use and failing to promptly account for funds belonging to his client.

The facts, as developed at hearings before the Committee, fully substantiate its findings. The complainant, John J. Erla, retained the respondent in January 1962, to press a claim for damages arising from an automobile collision in which he had suffered physical injury and property damage. After negotiating with the insurance carrier, the respondent received an offer of settlement. On July 11, 1962 the complainant signed a general release which respondent used to obtain a draft, dated July 19, 1962, for $3,250, payable to the order of "John J. Erla and Michael L. Malanga, Attorney." A direction printed on the back of the draft reads, "This draft must be endorsed by payee personally. * * *"

On July 23, 1962, the respondent deposited the draft in his bank account. The back of the cancelled draft shows that in addition to the endorsement of the respondent, the name "John J. Erla" appears. Mr. Erla did not endorse the draft and had no knowledge of the endorsement, and the respondent admits that, at his direction, Mr. Erla's name was placed there by someone else. It is significant to note that Mr. Erla's name was written on the draft so as to simulate his real signature.

At the time of the deposit, the $3,250 represented almost all the money in the respondent's bank account. From then until December 19, 1962, the respondent wrote 89 checks leaving a balance on that date of $2. None of these checks were payable to the complainant. None were for large amounts, and most were apparently used to pay the respondent's personal or office expenses.

Complainant saw the respondent for the last time on July 11, 1962, when the general release was executed and, despite numerous attempts to communicate with the respondent,

could get no closer to him than his answering service. Unable to obtain his share of the proceeds of the settlement for nearly two years, the complainant retained another attorney in the Spring of 1964. However, the respondent continued his evasiveness, and this attorney had no more success in dealing with him than had the complainant.

Payment of $2,200, which has been accepted by the complainant in satisfaction of his claim, has been made by the respondent, but under circumstances which are hardly extenuating. After the original complaint was filed with the Committee on October 7, 1964, a copy was sent to the respondent pursuant to R. R. 1 :16–4 with the request that he file a written answer thereto within 10 days. Upon his failure to file such an answer, this court entered an order on December 7, 1964, directing the respondent to show cause why he should not be suspended pending the outcome of the charge against him. On January 5, 1965, the return date of the order to show cause, the respondent filed his answer and was directed by the court to forthwith turn over to the secretary of the Committee the sum of $2,200. Respondent made payment on the same day, two and one-half years after the settlement of the claim.

Although the respondent admits his wrongful conduct and offers no direct defense, he alleges that there are mitigating circumstances. Both parties have indicated that there was some dispute over the amount of the fee to be paid out of the recovery, and respondent contends that this dispute partially accounts for his dereliction. This contention finds no support in the record. It is clear from the testimony of both the respondent and the complainant that whatever difference there was between them was not serious. Of more importance, since respondent never communicated with complainant after he received the draft from the insurance company, there was never any dispute while the money was actually in the respondent's possession. Moreover, if the respondent did believe there was a genuine dispute over the amount of his fee, his proper course of action would have been to deduct from

the settlement the amount to which he thought himself entitled, remitting the remainder to his client with a statement of how the fee was calculated, and to arrange seasonably for an adjudication as to the disputed amount.

As an additional mitigating circumstance, the respondent asserts that he always maintained at his home in a dresser drawer an amount of cash equivalent to that owed to the complainant. This court has in the past indicated that it need not accept an unsubstantiated claim of this type. *In re Banner*, 31 *N. J.* 24, 27 (1959). However, even admitting the truth of the respondent's claim, it is of no help to him. The gravamen of the presentment is not that the respondent was impoverished, but that he wrongfully obtained money belonging to the complainant, used such money for his own purposes and withheld payment for two and one-half years. If the respondent did in fact keep a large amount of cash in his home, this proves only that his derelictions were not motivated by personal financial needs—which makes these derelictions even less comprehensible.

*Canon 11* provides:

"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

Violations of this canon have always been considered among the most serious breaches of an attorney's obligations. "The funds in the hands of an attorney that belong to a client or others must be kept inviolate. For obvious reasons, the strictest rules of conduct apply here and every presumption works against the wrongful user." *In re Gavel*, 22 *N. J.* 248, 264 (1956). The respondent violated every part of *Canon 11* and by his conduct has shown that he either does not understand or is unwilling to undertake its basic obligations. An examination of the respondent's checkbook, as maintained during

the period in question, discloses extreme carelessness and shows a lack of appreciation of the fundamentals required to assure fulfillment of the duty so clearly imposed by the canon.

██ The object of disciplinary measures is "the protection of the public, the purification of the bar and the prevention of a re-occurrence." *In re Baron,* 25 *N. J.* 445, 449 (1957). In the circumstances of this case, we conclude that the respondent should be suspended from the practice of law for a period of three years and until further order of this court.

*For suspension for three years*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.