172 N.J. Super. 263 (1980)
411 A.2d 1144
GOODWIN MOTOR CORPORATION AND JONATHAN COLLINS, INC., PLAINTIFFS-APPELLANTS, AND INDEPENDENT AUTO SYSTEMS CO., INC., APPLICANT FOR INTERVENTION-APPELLANT,
v.
MERCEDES-BENZ OF NORTH AMERICA, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1980.
Decided February 1, 1980.
*266 Before Judges MATTHEWS, ARD and POLOW.
*267 Peter R. Sarasohn appeared for plaintiffs-appellants and applicant for intervention-appellant (Ravin & Kesselhaut, attorneys; Bernard Schenkler and Peter R. Sarasohn on the brief).
Wayne H. Samson appeared for defendant-respondent (Allan G. Freund, attorney).
The opinion of the court was delivered by POLOW, J.A.D.
On behalf of all appellants, the law firm of Ravin & Kesselhaut sought and obtained leave to appeal interlocutory orders denying Independent Auto Systems Co., Inc. (IAS) the right to intervene as a plaintiff in this action and disqualifying Ravin & Kesselhaut from continuing to represent the original plaintiffs, Goodwin Motor Corp. (Goodwin) and Jonathan Collins, Inc. (JCI).
In June 1978 plaintiffs started suit in the Chancery Division to enjoin a threatened termination by defendant Mercedes-Benz of North America, Inc. (MBNA) of Goodwin's automobile dealership franchise which plaintiffs had been operating in Plainfield. At that time termination of plaintiff's franchise was temporarily restrained, and shortly thereafter the parties agreed to the continued operation of the dealership pending an audit of the financial condition of plaintiff corporations. An order reflecting their agreement in the form of a further stay was filed on July 11, 1978 and remained in effect until it was ordered vacated following a hearing on November 17, 1978. However, no formal written dissolution of the stay was filed until January 3, 1979, effective nunc pro tunc as of November 26, 1978.
On December 7, 1978, after the hearing on MBNA's motion to vacate the stay but before the order had been signed and filed, plaintiffs filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. The bankruptcy court appointed a receiver and issued its own interim restraint against MBNA's effort to terminate the Goodwin franchise. On appeal to the United States District Court, the restraint was vacated based *268 upon a ruling that the bankruptcy court had no jurisdiction over MBNA.[1]
On February 9, 1979 the law firm of Ravin & Kesselhaut was substituted as counsel for plaintiffs Goodwin and JCI.[2] On the same date IAS applied to intervene as a plaintiff and sought to compel defendant to submit to discovery. Ravin & Kesselhaut also represented IAS on its application. At the hearing on the motion the propriety of Ravin & Kesselhaut's representation of IAS while continuing to represent plaintiffs Goodwin and JCI was raised by the judge on his own motion. On May 16, 1979, Judge Ackerman, relying on the clean hands doctrine, denied IAS's motion to intervene and, noting existence of a potential conflict of interests, ordered Ravin & Kesselhaut to withdraw as counsel for the original plaintiffs, Goodwin and JCI. Leave to appeal was granted on June 29, 1979.
The issues as framed by appellants are the following:
Point I The trial court's denial of intervention for the sole reason of "unclean hands" is reversible error
Point II IAS is entitled to intervene as of right
Point III The order of the trial court that Ravin & Kesselhaut must withdraw from representing the plaintiff as a conflict of interest is reversible error
MBNA is the United States distributor of Mercedes-Benz automobiles. Goodwin, a Mercedes-Benz dealer since 1957, has been owned and operated by JCI since 1973. JCI, in turn, had been owned and controlled by Ronald Collins, at least until April 1978, when IAS became involved.
The most recent formal dealership agreement between Goodwin and MBNA expired December 31, 1977. By letter dated *269 April 7, 1978 MBNA notified Goodwin of its intention not to renew the Plainfield Mercedes-Benz franchise because of Goodwin's failure to maintain financial standards in accordance with the terms of the dealership agreement between the parties. On April 12, 1978 IAS negotiated an agreement to purchase a controlling interest in Goodwin and JCI, subject to approval by MBNA, as required by N.J.S.A. 56:10 6. Under that agreement IAS obtained a proxy to vote 80% of Goodwin's stock and the right to assign its interest in the dealership to some other prospective franchisee.
On May 1, 1978 MBNA rejected IAS as a prospective franchisee because Peter Ubaldi, Jr., one of its principals, operated another corporation against which MBNA has been unable to satisfy a judgment on an outstanding obligation. By letter dated May 30, 1978 Ronald Collins assured MBNA that he would no longer entertain any proposal for transfer of the franchise to any group with which Ubaldi was involved. Collins' letter contained no mention of the April 12 agreement under which Ubaldi and his associates had the right to vote 80% of the Goodwin stock and under which the Ubaldi group had taken over operation of the Goodwin dealership.
Although other prospective transferees were submitted over the next several months, MBNA rejected all of them. During that time this action was instituted by Goodwin and JCI. The temporary restraint against termination of the franchise was issued by agreement until MBNA discovered that Ubaldi and his associates had taken control of Goodwin Motors, that they represented themselves as its owners and that they were conducting the day-to-day operations of the dealership.
In granting MBNA's motion to vacate the restraints, the Chancery Division judge noted that de facto control of the dealership had passed to Ubaldi and his associate, one Tackas. Tackas also had been determined unacceptable as a franchise operator by MBNA since he had a prior criminal record. In *270 view of the specific rejection of both Ubaldi and Tackas as prospective transferees, the judge found that it would be inequitable and contrary to the spirit of the New Jersey Franchise Practices Act, N.J.S.A. 56:10 1 et seq., to compel MBNA to continue to deal with them. Thus, the stay was vacated.
Shortly after the restraints were vacated, plaintiffs filed their petition for reorganization. Affidavits filed with the bankruptcy court confirmed the existence of the 80% proxy vote held by IAS and the election of Ubaldi and Tackas as officers and directors of Goodwin as of April 17, 1978. The assertions made in the bankruptcy court were in direct conflict with representations made in the Chancery Division where Ubaldi claimed that he was merely operating Goodwin Motors in a custodial capacity. At the January 3, 1979 hearing for entry of an order reflecting the November oral decision vacating restraints, Judge Ackerman concluded that Ubaldi and Collins had deliberately misled the court by concealing the true nature of the relationship between IAS and Collins.
There is little doubt that the trial judge was deliberately deceived.[3] One of the hotly contested issues in the bankruptcy proceedings concerns conflicting claims of Ronald Collins and IAS for control of Goodwin and JCI. For a period of time during the spring and summer of 1978, Collins was disabled due to surgery for cancer. When he recovered in late summer or early fall of 1978, Ubaldi and Tackas as principals of IAS were operating the dealership. Collins demanded that control of the business be returned to him. At the bankruptcy hearing Ubaldi identified IAS as the "real party in interest" and testified that he refused to yield to Collins' demand.

*271 I
In denying IAS's motion to intervene, the trial judge determined that IAS came before the court with unclean hands and was thereby disqualified from any right to relief in this action. IAS insists that the clean hands doctrine has no application to a motion to intervene. It argues, and we agree, that this maxim "does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct ..." Neubeck v. Neubeck, 94 N.J. Eq. 167, 170 (E. & A. 1922); Kem Products Co. v. Levin, 117 N.J. Eq. 560, 563 564 (Ch. 1935). The clean hands doctrine must be applied with just discretion and courts may not exercise their equitable powers arbitrarily. Untermann v. Untermann, 19 N.J. 507, 518 (1955).
Nonetheless, a court of equity will deny its remedies to a suitor who has been guilty of bad faith, fraud or unconscionable acts in the transaction which forms the basis of the lawsuit. Id. at 517, 117 A.2d 599; Pendleton v. Gondolf, 85 N.J. Eq. 308, 313 (Ch. 1915). If circumstances calling for its application are disclosed by the record, then a court of equity, being a court of conscience, is justified in refusing to listen even though the complaint be well founded. Prindiville v. Johnson & Higgins, 93 N.J. Eq. 425, 428 (E. & A. 1922); Kem Products Co. v. Levin, supra, 117 N.J. Eq. at 563.
The Chancery Division judge based his denial of IAS's motion to intervene on the fact that IAS and its principals
... concealed from this court for months the alleged 80 per cent proxy control over JCI and Goodwin. I find that Mr. Ubaldi's statements regarding his presence at Goodwin in a "custodial capacity" were and are patently false, deliberately misleading, and bordering on the contumacious.
We are satisfied that the clean hands doctrine is applicable to a motion to intervene under such circumstances and that Judge Ackerman properly applied the equitable maxim in this case.

*272 II
Although the Franchise Practices Act permits transfer of a franchise if the proposed transferee is not unacceptable to the franchisor for reasons relating to character, financial ability or business experience. N.J.S.A. 56:10 6, IAS does not assert that it has a right to be accepted as a transferee. Instead IAS insists that, as the alter ego of Goodwin and JCI, it should have the right to participate in a lawsuit concerning defendant's right to terminate the franchise. In support of this contention IAS relies substantially on the very relationship between itself and the original plaintiffs which was deliberately concealed from the court before the application for intervention was sought.
There is no direct relationship nor privity between IAS and defendant. The only interest IAS may claim in the premises comes about through its agreement with plaintiffs which was deliberately concealed under circumstances requiring full disclosure to the court.
The arrangements between appellant and plaintiffs were in effect before the instant action was originally instituted. IAS was fully aware of the proceedings but nevertheless saw fit to remain a silent spectator until after the November 1978 Chancery Division order vacating the interim restraint. It was satisfied that Goodwin and JCI could adequately preserve the remedies demanded, at least until the decision to file the bankruptcy court action seeking, among other things, the same restraint against termination of the Mercedes-Benz franchise which had been vacated by our state court.
Notwithstanding the general rule that applications for permission to intervene are ordinarily treated liberally, yet, in a situation attended with difficulties, delays and improper conduct amounting to unclean hands as in this case, we will not interfere with the considered judgment of the trial judge that intervention not be permitted. State v. Lanza, 39 N.J. 595, 600 (1963), cert. den. 375 U.S. 451, 84 S.Ct. 525, 11 L.Ed.2d 477 (1964).

*273 III
After reviewing the transcripts of the January 1979 hearing before the bankruptcy court, the Chancery Division judge noted the existence of a conflict of interests between Ronald Collins and IAS, both of whom claimed control of Goodwin and JCI. Since the law firm of Ravin & Kesselhaut purported to appear in the Chancery Division action on behalf of all three corporations, Judge Ackerman ordered the firm to withdraw as counsel for plaintiffs-appellants Goodwin and JCI. Appellants challenge this decision, relying on a prior order of the bankruptcy judge that Ravin & Kesselhaut "be deemed to be the attorneys for the debtors...." The debtors are JCI and Goodwin.
Our disciplinary rules impose upon counsel the responsibility to make an initial evaluation with regard to potential conflicts of interests. If the lawyer believes he can adequately represent multiple interests and, after full disclosure of the facts and of the possible effect of such representation on the exercise of his independent judgment, each of those interests consents, he may then proceed. DR5 105(C); In re Lanza, 65 N.J. 347 (1974). However, he does so at his peril. Should it eventuate that an inherent conflict jeopardizes the interests of any of such multiple clients, he will then suffer such consequences as may flow from any conduct determined to be violative of our disciplinary rules. Ibid.
On the record before us we cannot conclude at this time that there exists such a conflict which would require the court to force counsel to disqualify themselves under DR5 105. If IAS continues to control JCI, as the bankruptcy court has permitted pending further proceedings, no present conflict among the three corporations is evident. Their interests in the Chancery Division litigation are identical. However, should Ronald Collins eventually succeed in his effort to wrest control of JCI from IAS, a clear conflict of interests would materialize. Although we are not bound by the bankruptcy court's determination *274 that Ravin & Kesselhaut are entitled to represent plaintiffs in state court proceedings, we will nevertheless recognize its ruling with respect to IAS's control of Goodwin and JCI for the purpose of resolving the conflict of interests question. We agree that with respect to the issue of corporate control, it would be inappropriate for this court to "interpret" the order of the bankruptcy court or, in counsel's words, to look behind "the face of the order." See Allegheny Cty. v. Maryland Cas. Co., 132 F.2d 894, 897 (3 Cir.1943), cert. den. 318 U.S. 787, 63 S.Ct. 981, 87 L.Ed. 1154 (1943). Hence, we will permit Ravin & Kesselhaut to exercise their own judgment as to whether to continue to represent plaintiffs Goodwin and JCI. Where there is no evident conflict of interests nor apparent ethics violation, a trial judge lacks authority to order counsel to withdraw. Kridel v. Kridel, 85 N.J. Super. 478, 488 (App.Div. 1964).
However, our conclusion that Ravin & Kesselhaut should not be compelled to withdraw as counsel for plaintiffs is not based upon IAS's argument that an order of the bankruptcy court respecting legal representation has a binding effect on state court litigation. Our Constitution reposes in the New Jersey Supreme Court "jurisdiction over the admission to the practice of law and the discipline of persons admitted." N.J. Const. (1947), Art. VI, § II, par. 3; In re Boyle, 18 N.J. 415, 416 (1955). Courts in every jurisdiction are given the power necessary to control the practice of law before them as an "incident to their broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied." State v. Kavanaugh, 52 N.J. 7, 19 (1968), cert. den. sub nom. Matzner v. N.J., 393 U.S. 924, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968).
Nor should our decision be interpreted as immunizing counsel against disciplinary charges should an inherent conflict or other reasons for disqualification in fact exist. All members of the bar of this State are chargeable with strict adherence to *275 our disciplinary rules, which require not only the absence of misconduct but also the avoidance of even the appearance of impropriety. DR9 101; State v. Rizzo, 69 N.J. 28, 30 (1975). Although we do not find sufficient support for the order of disqualification, nevertheless, we vigorously "discourage an attorney from taking any chances" where the potential for conflict exists. In re Lanza, supra, 65 N.J. at 358 (Pashman, J., concurring).
We affirm the denial of the motion to intervene and reverse the disqualification of counsel.
NOTES
[1] The record indicates that the U.S. District Court ruling has been appealed but we have no knowledge of the status of the appeal.
[2] Although Ravin & Kesselhaut filed a notice of appeal on behalf of plaintiffs-appellants as well as IAS, the brief was filed for IAS only. Nevertheless, we treat it as if it had been filed for all appellants.
[3] The firm of Ravin & Kesselhaut, now counsel for all appellants, did not represent any of the parties in the trial court nor was it involved in the trial court proceedings when the deception took place.