209 N.J. Super. 155 (1986)
507 A.2d 242
GAIL T. AVERY, PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
ROBERT W. AVERY, DEFENDANT-RESPONDENT, CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1986.
Decided March 24, 1986.
*156 Before Judges J.H. COLEMAN and LONG.
Ann Avram Huber argued the cause for appellant, cross-respondent (Nusbaum, Stein, Goldstein & Bronstein, attorneys; Ann Avram Huber on the brief).
Albert B. Jeffers argued the cause for respondent, cross-appellant.
The opinion of the court was delivered by J.H. COLEMAN, J.A.D.
The question raised by this appeal is whether a former wife's increased earnings subsequent to the divorce constitute changed circumstances entitling the former husband to terminate alimony irrespective of the former wife's needs for support of herself and the children born of the marriage. Plaintiff and defendant were divorced by judgment dated August 9, 1982. An Interspousal Agreement originally made in 1980 was modified and incorporated into the Judgment of Divorce. That agreement provided, among other things, for the payment of alimony, child support and college educational expenses for the *157 three children born of the marriage. On February 28, 1985 an order was entered terminating alimony based upon plaintiff's increased earnings without consideration of her current needs. Thereafter, plaintiff sought (1) a reconsideration of the order terminating alimony, (2) an increase in child support, and (3) contribution by defendant for the children's college educational expenses. Under an order dated March 29, 1985, plaintiff's applications for reinstatement of alimony and for increased child support were denied. That order directed that plaintiff pay 35% of the college expenses and that defendant pay 65%.
Plaintiff has appealed, according to her notice of appeal, "from the Order entered in this action on March 29, 1985 in favor of the defendant." Defendant has cross-appealed from that portion of the March 29, 1985 order "in favor of plaintiff directing defendant to pay sixty-five percent of reasonable college education expenses."[1] For the reasons which follow, we reverse the order of February 28, 1985 which terminated alimony.
The facts essential to our decision are not in serious dispute. The 1980 Interspousal Agreement, in pertinent part, provided:
6. ALIMONY AND CHILD SUPPORT. Commencing March 1, 1980, and continuing until March 1, 1981, the husband shall pay to the wife the sum of $300 per week, allocated $150 per week alimony and $50 per week, per child, as and for the support of the minor children. Commencing March 1, 1981, the husband shall pay to the wife the sum of $250 per week, allocated $100 per week alimony and $50 per week, per child, as and for the support of the children.
Payments of alimony shall terminate upon the wife's remarriage, her living in a relationship with another man tantamount to remarriage or the children of the marriage becoming emancipated.
Payments of child support shall continue as to each child until he or she becomes emancipated. For purposes of the within agreement the children shall not be deemed to be emancipated if they continue their education beyond high school, as full time students in a college, university or trade school, provided *158 however, that if the children do continue their education beyond high school, the husband's obligation of child support shall not extend beyond four years of the child's post-high school education.
7. COLLEGE EDUCATION OF THE CHILDREN. The parties shall contribute to the expenses of the college or trade school education of the children to the extent of their financial ability. The continuing child support payments made by the husband while the child is continuing his or her education shall be a factor to be considered in determining the amount to be contributed by the husband toward the expenses of such education. The choice of the school which the child shall attend shall be by agreement between the husband, the wife and the child involved. All children shall be encouraged to defray portions of their education expenses through scholarships, loans, monies from summer employment and the like.
At the time of the divorce, however, the agreement was modified to the extent that the $50 per week reduction in alimony effective March 1, 1981 was eliminated. In all other respects, the agreement as written was incorporated into the divorce judgment.
Plaintiff was not gainfully employed just prior to the parties' separation in about October 1979. Simultaneously with the separation, plaintiff took a position as a real estate sales person with Weichert Realtors. Federal Income Tax Returns for the years 1980, 1981, 1982 and 1983 showed plaintiff's gross and adjusted business income as follows:

 YEAR GROSS PAY ADJUSTED BUSINESS INCOME
 1980 $ 3,577.00 $ 111.00
 1981 14,636.00 10,115.00
 1982 22,525.00 17,792.00
 1983 36,208.00 24,708.00

When the motion for reduction or termination of alimony was returnable before the court on September 21, 1984, income data for 1984 apparently was not available for both parties. Plaintiff's monthly budget for the family as of October 5, 1984 was $3,356.85. As of that date, all three of the children needed dental work, 25% of which was payable by plaintiff. Plaintiff alleged that the increase in the cost of living due to inflation, combined with the maturation of the three children; born *159 August 10, 1967, November 22, 1969 and October 8, 1971; increased the family's living expenses substantially since 1980.
Defendant is the owner-operator of an automobile garage repair business known as British Motor Service. Federal Income Tax Returns for the years 1980 and 1983 showed defendant's gross and adjusted business income as follows:

 YEAR GROSS PAY ADJUSTED BUSINESS INCOME
 1980 $68,924.00 $44,435.00
 1983 82,046.00 58,163.00

Defendant's personal monthly expenses as of October 18, 1984 amounted to $3,468.62 inclusive of the $1,300 for alimony and child support.
By letter dated January 23, 1985, the trial judge advised counsel that alimony was terminated. He stated:
[A]fter considering all papers filed in support and opposition to this application, and in accordance with Lepis v. Lepis, 83 N.J. 139 (1980), there has been a sufficient change in circumstances as to warrant the Court granting Defendant's application for modification and suspending payment of alimony. .. ."
As a result of a pre-argument settlement conference held on July 10, 1985 in connection with this appeal, counsel for both parties consented to an Order for a Limited Remand entered by Judge Baruch S. Seidman, retired P.J.A.D. on recall, for the purpose of permitting them to file a joint motion requesting the trial court to make findings of fact and conclusions of law pursuant to R. 1:7-4 and to file the same with the Clerk of the Appellate Division. In response to a joint motion in conformance with the remand order, the trial judge made findings of facts and conclusions of law. In a letter dated October 18, 1985, he stated:
1. The agreement was entered into in 1980. The wife's income for that year was shown to be $111.00. In 1982 the wife's gross income was $21,658.00. Gross income in 1983 $36,000.00. The increase in gross income between 1982 and 1983 amounted to approximately 75%. This in and of itself is sufficient change of circumstances to warrant a modification of the alimony provisions, keeping in mind the defendant spouse's needs, as well as the defendant spouse's ability to contribute to those needs. The substantial change in the wife's *160 income renders a portion of the support which she was receiving from the defendant unnecessary to maintain the standard of living to which she is entitled to.
The crucial question raised by plaintiff's appeal is whether sufficient changed circumstances were demonstrated warranting termination of alimony. Plaintiff contends that the alimony payments are necessary to maintain the standard of living she and the children had become accustomed to prior to separation, and that her increased earnings were anticipated in order to support that standard of living. She contends that her increased earnings and the alimony are insufficient to support herself and the three children. Hence, she seeks a reversal of the February 28, 1985 order. Defendant, on the other hand, contends that alimony was properly terminated because plaintiff's increased earnings made alimony "from defendant unnecessary to maintain the standard of living to which she was entitled." Based upon plaintiff's 1983 earnings, defendant seeks a reduction in the apportionment of college educational expenses.
Lepis v. Lepis, 83 N.J. 139, 141 (1980) teaches that although there is a strong public policy favoring stability of consensual arrangements for support in matrimonial matters, changed circumstances may require a modification of the agreement based upon equitable principles. The purpose of support payments to a wife, whether or not they are called alimony, see Smith v. Smith, 72 N.J. 350, 359 (1977), is to maintain the dependent spouse and the children "at the standard of living they had become accustomed to prior to the separation." Lepis v. Lepis, supra, 83 N.J. at 150. The standard for deciding whether a support agreement should be modified based upon changed circumstances requires the court to determine "what, in the light of all the facts presented to it, is equitable and fair, giving due weight to the strong public policy favoring stability of arrangements." Lepis v. Lepis, supra, 83 N.J. at 148, quoting from Smith v. Smith, supra, 72 N.J. at 360.
*161 Plaintiff makes a compelling argument that all of her 1983 earnings, alimony and child support were required for her and the three children to live in the former marital home at the same standard they formerly enjoyed. The only real difference was an increase in the expenses. It is quite apparent that the trial judge failed to properly balance the income and personal expenses of the respective parties as required by Petersen v. Petersen, 85 N.J. 638, 643 (1981) when deciding whether to terminate alimony. In October 1984 plaintiff's monthly expenses for the family were alleged to be $3,356.85. Based upon her 1983 adjusted business income of $24,708 and alimony and child support of $13,000, she had a monthly income before taxes of $3,142.33 ($37,708 ÷ by 12 = $3,142.33). During the same period, defendant allegedly had monthly expenses of $3,468.62. Based upon his adjusted business income for 1983 of $58,163, he had a monthly income of $4,846.92. These figures demonstrate that when the application to terminate alimony was decided, plaintiff had a shortfall of $214.52 a month before payment of any income taxes. Clearly, she needed the alimony. At the same time, defendant had $1,378.30 a month left over after paying his personal expenses, which included alimony and child support, before payment of income taxes. Here the trial judge failed to recognize that in an inflationary economy which enhances personal income, it is reasonable to assume that the cost of living and concomitant needs of dependents will rise similarly. Petersen v. Petersen, id. See also Lepis v. Lepis, supra, 83 N.J. at 151.
More important, it is clear to us that the agreement contemplated that plaintiff's earnings would significantly increase. When the agreement was made in 1980 although plaintiff was already working as a real estate sales person, she only earned $111 in that year. With defendant's contribution, her gross income was still under $16,000, a figure totally inadequate to support herself and the three children in the manner they enjoyed prior to separation. Thus the agreement obviously contemplated a significant increase in plaintiff's earnings in *162 order to maintain the former life style of the family unit. Indeed, by the time of the divorce in 1982 plaintiff was earning $22,000 a year and yet the agreed upon alimony figure was not eliminated. The rather obvious implication of this is that it was understood by the parties (and apparently by the matrimonial judge who declined to give effect to a negotiated $50 per week decrease) that the alimony and child support were meant to be defendant's contribution to the family unit to supplement whatever income the wife earned. That this was the understanding of the parties is underscored by the language of the agreement itself which provides, in addition to the ordinary alimony cut-off events of remarriage and cohabitation, that alimony would cease when the children become emancipated without regard to plaintiff's income. The only point of such a triggering event is to recognize that in this particular case, alimony and child support payments indeed constitute a single unit of support to the family unit, which contribution would cease when the family unit was no longer intact. The agreement was tailored substantially to the needs and concerns of the parties. Hence, the strong public policy favoring stability of arrangements becomes more compelling when an agreement, such as the present one, contains many of the elements that a court would deem material in determining whether enforcement of the agreement would be just, fair and equitable. Petersen v. Petersen, supra, 85 N.J. at 645; Lepis v. Lepis, supra, 83 N.J. at 153-154.
We are completely satisfied that requiring defendant to contribute approximately 27% of his adjusted gross monthly income toward the support of his former wife and three children while the former wife is contributing 110% of her adjusted gross monthly earnings would not be inequitable or unfair. In the circumstances, the plaintiff's increased earnings in light of her needs do not represent changed circumstances permitting termination of alimony. To the contrary, the economic reality of the parties, including plaintiff's needs and defendant's ability to pay, dictate that alimony should not have been terminated. *163 See Gayet v. Gayet, 92 N.J. 149, 154 (1983). Consequently, the order of February 28, 1985 terminating alimony represents a clear abuse of discretion because the trial judge did not consider all of the controlling legal principles. See DeVita v. DeVita, 145 N.J. Super. 120, 123 (App.Div. 1976). That order is hereby reversed and the alimony is reinstated effective September 21, 1984.
On the cross appeal, defendant contends that he should not have been required to pay 65% of college educational expenses for David, the oldest child born of the marriage. The contention is based exclusively upon plaintiff's 1983 earnings. Essentially for the same reasons hereinbefore expressed, we find the cross appeal is clearly without merit. The division of David's college educational expenses was predicated upon the financial abilities of the parties as contemplated by their agreement. We therefore affirm that portion of the March 29, 1985 order which requires defendant to pay 65% of David's reasonable college educational expenses.
The order dated February 28, 1985 is reversed. The order dated March 29, 1985 is affirmed in part.
NOTES
[1] We are treating the order of March 29, 1985 as a final judgment for purposes of this appeal. In so doing, both the orders of February 28, 1985 and March 29, 1985 are on appeal and both parties have briefed and argued the propriety or impropriety of both orders.