262 N.J. Super. 343 (1993)
621 A.2d 37
E. CHRISTINE ROLNICK, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
JEROME J. ROLNICK, DEFENDANT-RESPONDENT AND CROSS-APPELLANT. E. CHRISTINE ROLNICK, PLAINTIFF-RESPONDENT,
v.
JEROME J. ROLNICK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 24, 1992.
Decided February 18, 1993.
*348 Before Judges MICHELS, BILDER and WALLACE.
E. Christine Rolnick, plaintiff-appellant, cross-respondent and respondent, pro se.
*349 Brigiani, Gelzer, Cohen & Schneider, attorneys for plaintiff-respondent, cross-appellant and appellant Jerome J. Rolnick (Louis Cohen, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
In these consolidated appeals, plaintiff E. Christine Rolnick and defendant Jerome J. Rolnick challenge portions of post-judgment orders of the Chancery Division, Family Part entered in this protracted matrimonial action. In the first appeal (A-6083-90T5), plaintiff appeals and defendant cross-appeals from an order dated July 9, 1991. Plaintiff contends that the trial court erred in refusing to enforce the terms of the settlement agreement incorporated in the judgment of divorce, and in modifying the agreement on the basis of changed circumstances that were anticipated by the parties and provided for in advance. Specifically, plaintiff contends that (1) Lepis[1] should not be used to modify an agreement that sets forth in advance a fair procedure for addressing changed circumstances; (2) she lived with the detriment of the supplemental income provision of the agreement for twenty years and should not now be deprived of its benefits; (3) defendant was not entitled to the equitable remedy of modification since he did not fully disclose and report his income; (4) the trial court erred in including business losses of defendant's new wife and finding changed circumstances based thereon, and (5) the trial court erred in not awarding her counsel fees under the circumstances of this case, since defendant was represented by a personal friend, paid no counsel fees over five years of litigation, and essentially forced plaintiff to expend over $30,000 in counsel fees in order to defend court ordered agreements. Defendant, on the cross-appeal, contends that the trial court erred in failing to terminate his obligations for alimony and plaintiff's unreimbursed *350 medical and dental expenses. He further contends that his second wife's income or loss should not enter into the computation of his income for purposes of calculating any bonus or supplemental income payments payable to plaintiff.
In the second appeal (A-2178-91T5), defendant appeals from orders dated November 7, 1991 and December 6, 1991. Defendant contends, with respect to the November 7, 1991 order, that the trial court erred in requiring him to pay plaintiff moneys attributable to the bonus payment/escalator clause for 1984 and 1985, and thus, in essence, improperly overruled the prior order of July 9, 1991. Specifically, defendant contends that (1) the trial court, by its prior order of July 9, 1991, intended its ruling to apply to the calendar year 1984 and all subsequent years; (2) the trial court erred in not giving him a credit for tax and/or bonus moneys previously paid to plaintiff; (3) the trial court lacked jurisdiction to enter an order regarding bonus payments attributable to 1984 and 1985, and (4) the trial court took inconsistent positions on the issues of jurisdiction lying with the Appellate Division and the enforcement of judgments and orders of the trial court. With respect to the order of December 6, 1991, defendant contends that the trial court erred in denying his motion for reconsideration of the November 7, 1991 order on the basis that it was not timely filed. We consolidated these appeals and cross-appeals.

I.

Appeal and Cross-Appeal from Order Dated July 9, 1991 (A-6083-90T5)
We first address plaintiff's appeal and defendant's cross-appeal from the order of July 9, 1991. We are satisfied from our consideration of the record and the arguments presented that, with the sole exception of the trial court's failure to consider (1) plaintiff's claim that the defendant failed to fully disclose and report his entire income and (2) the effect that this alleged failure may have had on her right to bonus payments *351 under the separation agreement, the order of the trial court is based on findings of fact which are adequately supported by the evidence. Moreover, all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(A) and (E). Accordingly, we affirm the order of July 9, 1991 substantially for the reasons expressed by Judge Rodriquez in his oral opinion of October 25, 1991.
However, before turning to plaintiff's claim that the modification of the agreement was barred by plaintiff's failure to fully disclose and report income subject to the bonus payment provisions, further comment is appropriate with respect to some of the other contentions raised on this appeal.

A.
Plaintiff argues that the trial court erred in modifying the support agreement on the basis of changed circumstances that were anticipated and provided for in advance by the parties. She contends that Lepis v. Lepis, 83 N.J. 139, 145, 416 A.2d 45 (1980), should not be used to modify an agreement that sets forth in advance a fair procedure for addressing changed circumstances. We disagree.
In this regard, it is well settled that "[t]he Superior Court has power to direct the specific performance of the terms of husband-wife support agreements to the extent that they are just and equitable." Schlemm v. Schlemm, 31 N.J. 557, 581-82, 158 A.2d 508 (1960). Our courts "have recognized and emphasized repeatedly that matrimonial agreements between spouses relating to alimony and support, which are fair and just, fall within the category of contracts enforceable in equity." Petersen v. Petersen, 85 N.J. 638, 642, 428 A.2d 1301 (1981); Carlsen v. Carlsen, 72 N.J. 363, 370-71, 371 A.2d 8 (1977); Berkowitz v. Berkowitz, 55 N.J. 564, 569, 264 A.2d 49 (1970); Schiff v. Schiff, 116 N.J. Super. 546, 558, 283 A.2d 131 (App.Div. 1971), certif. denied, 60 N.J. 139, 286 A.2d 512 (1972).
*352 In Berkowitz v. Berkowitz, supra, our Supreme Court specifically held:
Agreements between separated spouses executed voluntarily and understandingly for the purpose of settling the issue of support for the wife and children are specifically enforceable, but only to the extent that they are just and equitable. Schlemm v. Schlemm, 31 N.J. 557 [158 A.2d 508] (1960) (support of wife); Equitable Life Assur. Soc. of United Stated v. Huster, 75 N.J. Super. 492 [183 A.2d 473] (App.Div. 1962) (support of wife and children). Therefore, the trial court has the discretion to modify the agreement upon a showing of changed circumstances. Flicker v. Chenitz, 55 N.J. Super. 273, 292 [150 A.2d 688] (App.Div. 1959), certif. granted, 30 N.J. 152 [152 A.2d 171], appeal dismissed by consent, 30 N.J. 566 [154 A.2d 452] (1959). Modification is similarly proper when the separation agreement is incorporated in the judgment nisi. Schluter v. Schluter, 23 N.J. Super. 409 [93 A.2d 211] (App.Div. 1952). However, when the parties and their attorneys have bargained at arm's length and there is no showing of unfairness, the trial court should not supply terms which the parties obviously considered and yet did not adopt. [55 N.J. at 569, 264 A.2d 49].
Subsequently, in addressing the discretion of trial courts to modify a separation agreement based upon changed circumstances, we held, in Schiff v. Schiff, supra, that, under the relevant principles regarding specific performance of contracts in equity, "[a] far greater showing of changed circumstances" was required in order to modify a spousal agreement, as opposed to a judicial order for alimony or support. 116 N.J. Super. at 561, 283 A.2d 131. However, this rule was later rejected by our Supreme Court in Smith v. Smith, 72 N.J. 350, 371 A.2d 1 (1977), where Justice Mountain, in the context of equitable distribution, stated:
Ever since Schlemm v. Schlemm, supra, overruled Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529 [162 A. 543] (E. & A. 1932), separation agreements, if found to be fair and just, have been specifically enforceable in equity. Sometimes in suits seeking such relief, the defense has been interposed that changed circumstances should preclude the granting of this always discretionary remedy. Upon other occasions a plaintiff has affirmatively sought to be relieved from making such payments upon the ground that a change in circumstances justifies such relief. The court is then called upon to examine the nature and extent of the alleged change. It has heretofore been accepted doctrine that a greater showing of changed circumstances is needed if a change is to be made when the support payments have been determined by interspousal consent than when they have been settled by court decree. The leading case is Schiff v. Schiff, 116 N.J. Super. 546 [283 A.2d 131] (App.Div. 1971). There the court said,

*353 A far greater showing of changed circumstances must be made before the court can modify a separation agreement than need be shown to warrant the court amending an order for alimony or support. [116 N.J. Super. at 561, 283 A.2d 131]
Because, as we have just pointed out, support payments are intimately related to equitable distribution, and because we feel that trial judges should have the utmost leeway and flexibility in determining what is just and equitable in making allocations of marital assets, we think the foregoing rule should now be changed. Henceforth the extent of the change in circumstances, whether urged by plaintiff or defendant, shall be the same, regardless of whether the support payments being questioned were determined consensually or by judicial decree. In each case the court must determine what, in light of all the facts presented to it, is equitable and fair, giving due weight to the strong public policy favoring stability of arrangements. [72 N.J. at 359-60, 371 A.2d 1].
Three years later, the new rule was reaffirmed and clarified by our Supreme Court in the landmark case of Lepis v. Lepis, supra, in which "the effect of a consensual agreement upon the court's power to modify obligations of support and maintenance" was addressed. 83 N.J. at 145, 416 A.2d 45. Specifically, the Court stated:
The rule announced in Smith is fully applicable when considering post-judgment modification. Consensual agreements and judicial decrees should be subject to the same standard of "changed circumstances." Initially it might appear that this rule would diminish the advantages of separation and property settlement agreements, since they would provide no greater certainty or stability than a judicial determination. However, granting a greater degree of permanence to negotiated agreements would tend to make them a riskier arrangement for spouses who are likely to be harmed by changed circumstances. Typically, they have been spouses who are economically dependent; they generally have been wives with custody of children. Often consensual agreements would not be in their best interests if only "unconscionable" circumstances would warrant modification. As we recognized in rejecting Schiff, contract principles have little place in the law of domestic relations. See Smith, 72 N.J. at 360 [371 A.2d 1]. [Lepis, supra, 83 N.J. at 148 [416 A.2d 45] (footnote omitted)].
Here, the provision in question was part of the parties' 1967 separation agreement, and it linked increases in plaintiff's support to increases in defendant's income as follows:
11. Jerome further agrees to pay to Christine, a su[m] equal to Twenty (20%) per cent of all income received by him in excess of $20,000.00 net per annum. Said sum[] to be allocated a[s] follows: Fifteen (15%) per cent of said additional Twenty (20%) per cent to each child, and fifty-five (55%) per cent of said twenty (20%) per cent to Christine. Financial books and records [of] *354 Jerome shall be made available for inspection by Christine at six month intervals during each calendar year. [Emphasis added].
This provision was subsequently clarified by the parties' 1969 agreement which stated that:
1. The net income shall be interpreted to mea[n] and be the same as the adjusted gross income as shown on the income tax return of Jerome J. Rolnick for the Internal Revenue Service, and the additional payments due E. Christine Rolnick for herself and the children shall be based on 20% of the excess over $20,000.00 of that adjusted gross income, if any. In the event that Jerome J. Rolnick shall file a joint return with a new spouse, the adjusted gross income referred to above shall include only income earned by Jerome J. Rolnick and shall not include any income earned by the new spouse. The said Jerome J. Rolnick shall be entitled to deductions for ordinary and necessary business and/or professional expenses which are included in itemized deductions or elsewhere on the tax return against said adjusted gross income prior to the computation of the 20% excess payment due.
It was further modified by the trial court's September 17, 1986 order, as follows: "The applicable percentage for purposes of computation of any additional alimony due to plaintiff in accordance with Paragraph 11 of the original agreement dated March 30, 1967 as modified by the agreement of June 20, 1969 between the parties [is] not to exceed 11%."
In Petersen v. Petersen, supra, the Supreme Court specifically considered the validity of clauses which provide "for the automatic escalation or adjustment of such payments in fixed amounts correlated to specific changes in the incomes of the respective spouses." 85 N.J. at 640, 428 A.2d 1301. The Court there held that such clauses, like the one in the instant agreement, are not invalid per se, and it went on to instruct that the proper procedure for determining whether such a clause is enforceable according to its terms is for the trial court to inquire "whether under changed circumstances the enforcement of those terms would be fair, just and equitable." Id. at 646, 428 A.2d 1301. See also Dunne v. Dunne, 209 N.J. Super. 559, 566, 508 A.2d 273 (App.Div. 1986), where we explained:
Although escalation clauses are not invalid per se, it does not follow that they are to be automatically enforced according to their specific terms. Petersen, 85 N.J. at 644 [428 A.2d 1301]. Enforcement of such agreements remains a judicial responsibility and is subject to judicial supervision. Lepis, 83 N.J. at 148-149 [416 A.2d 45]; accord Petersen, 85 N.J. at 644 [428 A.2d 1301]; *355 Mastropole v. Mastropole, 181 N.J. Super. 130, 141 [436 A.2d 955] (App.Div. 1981). Thus, the supporting spouse who is subject to a matrimonial agreement with an escalator clause may still seek to have the escalator modified because of changed circumstances, Petersen, 85 N.J. at 644 [428 A.2d 1301], even if the subsequent events concerning child support were foreseeable, and a fortiori, if the events were unforeseeable.
In light of the foregoing principles, and applying the Lepis standards, we are convinced that the trial court properly considered the issue of changed circumstances as it related to the enforceability of the escalation clause, and the remainder of the parties' agreement. Furthermore, the decision that the escalator clause was no longer enforceable due to changed circumstances was entirely justified in light of the trial court's findings that plaintiff and defendant enjoyed a standard of living greater than that at the time of the marriage, that plaintiff was much better able to contribute to her own needs, and that defendant's ability to continue payment under the escalator clause had either remained the same or decreased over the past several years.

B.
We are also satisfied that, contrary to plaintiff's claim, it was not inherently unfair for the trial court to modify the separation agreement after she had performed under its terms for over twenty years. Clearly, courts have the power to direct the specific performance of support agreements in equity, so long as they are just and equitable. Schlemm, supra, 31 N.J. at 581-82, 158 A.2d 508. See also Petersen, supra, 85 N.J. at 642, 428 A.2d 1301; Carlsen, supra, 72 N.J. at 370-71, 371 A.2d 8. However, "trial judges should have the utmost leeway and flexibility in determining what is just and equitable in making allocations of marital assets...." Smith, supra, 72 N.J. at 360, 371 A.2d 1. While it has been stated that "we are not persuaded that the trial court's duty to scrutinize marital agreements for fairness requires it to insert new terms because one party later suggests that a few changes would have made the agreement fairer," Dworkin v. Dworkin, 217 N.J. Super. *356 518, 523, 526 A.2d 278 (App.Div. 1987), our Supreme Court has held that "the terms of such agreements should receive continued enforcement without modification only so long as they remain fair and equitable. The equitable authority of a court to modify support obligations, regardless of their source, cannot be restricted." Lepis v. Lepis, supra, 83 N.J. at 148-49, 416 A.2d 45 (citing Smith, supra, 72 N.J. at 360, 371 A.2d 1 Berkowitz, supra, 55 N.J. at 569, 264 A.2d 49; Schlemm, supra, 31 N.J. at 581, 158 A.2d 508, and Parmly v. Parmly, 125 N.J. Eq. 545, 548, 5 A.2d 789 (E. & A. 1939)).
Plaintiff suggests that the trial court was barred from modifying the escalation clause upon finding changed circumstances because she had not previously requested a modification of that same provision when it had allegedly worked to her great detriment. We disagree. Generally, "contract principles have little place in the law of domestic relations," Lepis, supra, 83 N.J. at 148, 416 A.2d 45, including the principle of detrimental reliance asserted here. Instead, the court must be able to determine on a case by case basis "what, in light of all the facts presented to it, is equitable and fair, giving due weight to the strong public policy favoring stability of arrangements." Smith, supra, 72 N.J. at 360, 371 A.2d 1. In the case of an escalation clause, enforcement "remains a judicial responsibility and is subject to judicial supervision." Petersen, supra, 85 N.J. at 644, 428 A.2d 1301. "In the final analysis the contractual provisions for alimony and support, including those calling for escalated increases, can be enforced only if they satisfy [the relevant] equitable criteria." Id.
Application of these principles here compels the conclusion that the trial court properly exercised its discretion by modifying the prior agreement. Moreover, merely because one party to an agreement has declined for many years to seek relief on the basis of changed circumstances, such conduct does not preclude a court from modifying the agreement in appropriate circumstances at the behest of another party. To create *357 such a rule would afford the court less than "the utmost leeway and flexibility in determining what is just and equitable [when] making allocations of marital assets." Smith, supra, 72 N.J. at 360, 371 A.2d 1.

C.
Plaintiff next contends that the trial court erred in including business losses attributable to defendant's second wife when computing defendant's income and finding changed circumstances. She further asserts that the court erred in finding that defendant's adjusted gross income was only $43,270 in 1990. Her contentions in this regard are based on the fact that defendant's income tax return showed that he had other income which brought the total to $71,192 (excluding the business loss which she asserts was attributable to defendant's second wife), and that his case information statement revealed expenses of $6,723 per month, or approximately $80,676.00 per year, far in excess of his purported income. Defendant argues that the income or loss from his second wife's business was properly considered in deciding the issue of changed circumstances for alimony purposes, but asserts on cross-appeal that the trial court wrongly included his second wife's income in computing payments due under the escalation clause.
The parties' arguments stem from paragraph 1 of the 1969 modified property settlement agreement, which states, in pertinent part: "In the event that Jerome J. Rolnick shall file a joint return with a new spouse, the adjusted gross income referred to above shall include only income earned by Jerome J. Rolnick and shall not include any income earned by the new spouse." After a plenary hearing, at which evidence was adduced concerning the various business ventures of defendant and his second wife, Margaret Rolnick, the trial court made the following factual findings:
Addressing specifically the issues that were presented to me for resolution and which I have set forth at the beginning of this opinion, number one, the income, I find and I rule that the income from any business enterprise of Dr. and Mrs. *358 Rolnick must be included in his income in order to determine his adjusted gross income.
That ruling is based on the fact that from all of the credible testimony Dr. Rolnick was actually involved in those business schemes and it was really his attempt as much as it was his new wife's attempt to increase his income in order to meet his obligations. Not only that, but both of their testimony obviously,  and changed circumstances is bottomed on the fact that his new family and his new obligation[s] are to be taken into consideration and have been taken into consideration by this Court. Therefore, all income available to the unit is to be considered.
Accordingly, the trial court ordered that:
In determining the adjusted gross income of defendant, income or loss from any business ventures of Jerome and Margaret Rolnick contained in the tax return filed by [d]efendant is includable, in arriving at the adjusted gross income of [d]efendant, and specifically, the profits or losses associated with Wager, Inc. [sic] and Margaret's Craft Shop are includable.
Plaintiff asserts on appeal that neither the income nor the loss of defendant's second wife should have been included for the purpose of determining changed circumstances, or for the purpose of computing defendant's income under the escalation clause. She simultaneously objects to defendant's income being placed in his second wife's name, and his benefitting from what she terms defendant's second wife's business losses. Defendant, in a similar vein, contends that while the loss from his second wife's business was properly included in finding changed circumstances, his second wife's income was erroneously considered for purposes of computing his income under the escalation clause.
The arguments raised by the appeal and the cross-appeal on this issue are without merit. The trial court's finding that defendant was actually involved in his second wife's two businesses, Wayjer, Inc. and Margaret's Craft Shop, was supported by sufficient credible evidence in the record. It is axiomatic that the findings of a trial court are not generally disturbed unless "they are so wholly insupportable as to result in a denial of justice," and are upheld where they are "supported by adequate, substantial and credible evidence." Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974); accord Meshinsky v. Nichols Yacht Sales, *359 Inc., 110 N.J. 464, 475, 541 A.2d 1063 (1988). Furthermore, an "appellate court must give deference to the views of the trial judge" on intangibles not transmitted by the record such as witness credibility, demeanor, and the "feel of the case." Dolson v. Anastasia, 55 N.J. 2, 7, 258 A.2d 706 (1969).
It being clear that defendant was involved in, and was deriving benefit from, the two family businesses, defendant's share of both the income and the loss from those businesses was properly considered both in determining whether he met the burden of changed circumstances, and in computing his obligation under the escalation clause. As noted by Gary N. Skoloff & Laurence J. Cutler, I New Jersey Family Law Practice, § 5.3B(2) at 589 (6th ed. 1990), "[u]sually, all elements of a payor's income are available for support purposes, even if the source of the property generating such income is immune from equitable distribution, such as interest on a nondistributable bank account." Moreover, one of the specific factors set forth in N.J.S.A. 2A:34-23b, the statute concerning alimony and maintenance, is "[t]he actual need and ability of the parties to pay." These principles clearly serve to justify the inclusion of both the income and losses from defendant's business ventures with his second wife.

D.
Defendant also argues on cross-appeal that the trial court should have terminated alimony payments after the hearing. Again we disagree. "The modification of alimony is best left to the sound discretion of the trial court." Innes v. Innes, 117 N.J. 496, 504, 569 A.2d 770 (1990). Our Supreme Court has further held that every alimony application "rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Martindell v. Martindell, 21 N.J. 341, 355, 122 A.2d 352 (1956). Accord Gugliotta v. Gugliotta, 164 N.J. Super. 139, 141, 395 A.2d 901 *360 (App.Div. 1978); Grossman v. Grossman, 128 N.J. Super. 193, 195, 319 A.2d 508 (Ch.Div. 1974) ("An alimony award is thus subject to continuing review and its enforcement is within the sound discretion of the court."); Bartok v. Bartok, 52 N.J. Super. 266, 273, 145 A.2d 487 (App.Div. 1958).
To vacate a trial court's findings in a proceeding modifying alimony, an appellate court must conclude that the trial court clearly abused its discretion, Avery v. Avery, 209 N.J. Super. 155, 163, 507 A.2d 242 (App.Div. 1986); Gugliotta, supra, 164 N.J. Super. at 141, 395 A.2d 901, failed to consider "all of the controlling legal principles," Avery, supra, 209 N.J. Super. at 163, 507 A.2d 242, or it must otherwise be "well satisfied that the finding[s] [were] mistaken," Dale v. Dale, 13 N.J. Super. 59, 62, 80 A.2d 234 (App.Div. 1951), or that the determination could not "reasonably have been reached on sufficient credible evidence present in the record after consideration of the proofs as a whole." Gugliotta, supra, 164 N.J. Super. at 141, 395 A.2d 901. Moreover, "substantial weight" must be given to the judge's observations of the parties' "demeanor, comprehension and speech" when they appeared before the court," Barrie v. Barrie, 154 N.J. Super. 301, 307, 381 A.2d 374 (App.Div. 1977), certif. denied, 75 N.J. 601, 384 A.2d 831 (1978), and the fact that "[t]he trial judge ha[s] the distinct advantage of observing the demeanor of the witnesses and a better opportunity to judge of their credibility than a reviewing court." Friedman v. Friedman, 37 N.J. Super. 52, 57, 116 A.2d 793 (App.Div.), certif. denied, 20 N.J. 135, 118 A.2d 559 (1955).
In light of the foregoing standards, it is clear that the trial court did not abuse its discretion in refusing to terminate alimony.

E.
We turn now to plaintiff's claim that defendant was not entitled to modification because he did not fully disclose and *361 report his income. Plaintiff contends essentially that defendant owned and operated a Maaco Auto Body franchise which was sold in 1984, and that, because his accountant testified that defendant could not determine whether the sale of the business consisted of the sale of stock or the sale of assets, profits were never reported on defendant's income tax return, or used to determine defendant's income for purposes of calculating his support obligations. Secondly, plaintiff claims that throughout the period leading up to defendant's Lepis motion, "defendant did not accurately disclose the true amount of income that was subject to the supplemental income provision." She states that she relied upon defendant to calculate the amount of supplemental income due, since prior court orders prevented the disclosure of defendant's pre-1984 income tax returns, and that she only first saw defendant's unredacted 1984 tax return when it was made available at trial. She alleges that defendant's income on the 1984 tax return revealed that she should have received a bonus payment of $4,819, while she actually received only $1,974.
Our Supreme Court has stated that:
This Court has frequently explicated our public policy concerning matrimony and divorce in a wide variety of contexts. The source of that policy is the Divorce Act of 1972, N.J.S.A. 2A:34-1 et seq. The polestar of that policy is fairness, equity, flexibility and solicitous concern for the welfare and happiness of the individuals involved. [Newburgh v. Arrigo, 88 N.J. 529, 552-53, 443 A.2d 1031 (1982) (collecting cases)].
The basic equitable maxim of unclean hands is that "[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings." A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 246, 66 A.2d 319 (1949); accord Johnson v. Johnson, 212 N.J. Super. 368, 384, 515 A.2d 255 (Ch.Div. 1986); Pollino v. Pollino, 39 N.J. Super. 294, 298-99, 121 A.2d 62 (Ch.Div. 1956). "In simple parlance, it merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Faustin v. Lewis, 85 N.J. 507, 511, 427 *362 A.2d 1105 (1981). While "[u]sually applied to a plaintiff, this maxim means that a court of equity will refuse relief to [any] party who has acted in a manner contrary to the principles of equity." Johnson, supra, 212 N.J. Super. at 384, 515 A.2d 255.
The rule is that while general iniquitous conduct will not operate to bar plaintiff from relief by reason of unclean hands, iniquitous conduct relating to the particular matter or transaction to which judicial protection is sought will operate to bar relief. See 1 Herr, Marriage, Divorce and Separation (1938), § 149[.] Where the relief sought by the plaintiff is the result of his own wrongdoing, where the unclean hands of the plaintiff [have] infected the very subject matter in litigation, the plaintiff is barred from relief in a court of equity. [Pollino, supra, 39 N.J. Super. at 299, 121 A.2d 62].
See also Feldman v. Urban Commercial, Inc., 78 N.J. Super. 520, 533, 189 A.2d 467 (Ch.Div. 1963); aff'd, 87 N.J. Super. 391, 209 A.2d 640 (App.Div. 1965). Moreover:
A court of equity can never allow itself to become an instrument of injustice. Associated East Mortgage Co. v. Young, 163 N.J. Super. 315, 330, 394 A.2d 899 (Ch.Div. 1978)[.] [N]or will equity allow any wrongdoer to enrich himself as a result of his own criminal acts. Jackson v. Prudential Ins. Co. of America, 106 N.J. Super. 61, 68, 254 A.2d 141 (Law Div. 1969). In this respect, equity follows the common law precept that no one shall be allowed to benefit by his own wrongdoing. Neiman v. Hurff, 11 N.J. 55, 60, 93 A.2d 345 (1952). Thus, where the bad faith, fraud or unconscionable acts of a petitioner form the basis of his lawsuit, equity will deny him its remedies. Goodwin Motor Corp. v. Mercedes Benz of N.A., Inc., 172 N.J. Super. 263, 411 A.2d 1144 (App.Div. 1980). [Sheridan v. Sheridan, 247 N.J. Super. 552, 556, 589 A.2d 1067 (Ch.Div. 1990)].
See also Pollino, supra, 39 N.J. Super. at 304, 121 A.2d 62.
Furthermore, "`Equity will not aid a fraud doer.'" Id. at 299, 121 A.2d 62 (quoting Herder v. Garman, 106 N.J. Eq. 13, 149 A. 636 (Ch. 1930)). The doctrine of equitable fraud was explained by our Supreme Court in Jewish Center of Sussex Cty. v. Whale, as follows:
A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment. See Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254, 257 [314 A.2d 69] (App.Div. 1973), aff'd, 64 N.J. 197 [314 A.2d 68] (1974). The elements of scienter, that is, knowledge of the falsity and an intention to obtain an undue advantage therefrom, see Pomeroy, supra at 422; Gordon v. Schellhorn, 95 N.J. Eq. 563, 573-74 [123 A. 549] (Ch. 1924), are not essential if plaintiff seeks to prove that a misrepresentation *363 constituted only equitable fraud. Equitable Life Assurance Soc'y v. New Horizons, Inc., 28 N.J. 307, 314 [146 A.2d 466] (1958). See also Metropolitan Life Ins. Co. v. Tarnowski, 130 N.J. Eq. 1, 3 [20 A.2d 421] (E. & A. 1941); Hernig v. Harris, 117 N.J. Eq. 146, 150-51 [175 A. 169] (Ch. 1934). Thus, "[w]hatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law." 3 J. Pomeroy, supra, at 486-88. [86 N.J. 619, 624-25, 432 A.2d 521 (1981)].
Thus, where "a party seeks only equitable remedies, he or she need meet only the lesser burden; it is not necessary to show scienter." Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 609, 560 A.2d 655 (1989).
Ordinarily, plaintiff should have raised the issue of fraud or unclean hands as a defense to defendant's request for modification in the plenary hearing which resulted in the July 1991 order. However, in this matter she failed to do so, and instead addressed the issue for the first time on the subsequent motion which gave rise to the November 1991 order under review. Nevertheless, plaintiff's actions in this regard were entirely justified in this case because the trial court had specifically refused to consider the issue of changed circumstances relating to alimony, an issue very closely related to that of changed circumstances concerning the escalator clause. Thus, it was clear that the trial court would have similarly refused to consider plaintiff's fraud claims at the earlier hearing. Therefore, plaintiff had no duty to raise an argument which she knew would be rejected. Cf. State v. Worlock, 117 N.J. 596, 625, 569 A.2d 1314 (1990). Her fraud claims were thus properly raised before the trial court on the subsequent motion.
The trial court addressed plaintiff's allegations of fraud during the Lepis motion, but found that a determination on these claims was barred by laches, stating:
As to prior dates and these allegations of fraud and the like, it seems to this Court that to go back to 1979, '80, '81, '82 on the basis that the information that they had back then was insufficient or fraudulent, I think it's too late, and I feel that laches applies with regard to this agreement and therefore I will not order that moneys  supplemental moneys be paid or that there be a reexamination of what supplemental moneys are due and owing back in those dates.
*364 Laches is clearly a valid defense "when there is a delay, unexplained and inexcusable, in enforcing a known right, and prejudice has resulted to the other party because of that delay." Gladden v. Pub. Emp. Retirem. Sys. Trustee Bd., 171 N.J. Super. 363, 370-71, 409 A.2d 294 (App.Div. 1979). See Matter of Adoption of a Child of Indian Heritage, 111 N.J. 155, 190, 543 A.2d 925 (1988). "In a court of equity, however, the rule of laches is never applied in favor of a carefully designed and studied scheme of fraud...." Gallagher v. New England Mutual Life Ins. Co. of Boston, 19 N.J. 14, 23, 114 A.2d 857 (1955). Here, defendant's alleged fraud would have prevented plaintiff from discovering that the bonus payment checks were too small. Moreover:
It is also an established rule of equity that a defendant cannot have the benefit of the defense of laches when his own actions have created the inequity. Where a party interposing the defense of laches has contributed to or caused the delay, he cannot take advantage of it. [Bergen County Welfare Board v. Cueman, 164 N.J. Super. 401, 407-08, 396 A.2d 620 (Juv. & Dom.Rel.Ct., Bergen County 1978)].
Consequently, the trial court should have addressed plaintiff's claims of fraud or unclean hands which might have barred defendant's equitable request for modification, either at the plenary hearing or at the subsequent motion hearing. Because "it is axiomatic that all material factual disputes must be resolved on testimony," Dworkin v. Dworkin, supra, 217 N.J. Super. at 525, 526 A.2d 278; Hallberg v. Hallberg, 113 N.J. Super. 205, 208, 273 A.2d 389 (App.Div. 1971), a remand is warranted on the issue of defendant's fraud or unclean hands. On this remand, the trial court should focus on whether or not defendant fully disclosed and reported his income as such related to past payments.
Accordingly, except to remand the matter to the trial court for consideration of plaintiff's claims of fraud or unclean hands with respect to defendant's alleged failure to fully disclose and report his income, and the effect of such alleged failure upon her right to past bonus payments under the separation agreement, the order of July 9, 1991 is affirmed.

*365 II.

Appeal from Orders of November 7, 1991 and December 6, 1991 (A-2178-91T5)
Defendant contends on the appeal from the order of November 7, 1991 that the trial court had no jurisdiction to entertain plaintiff's cross-motion concerning bonus payments, due to the fact that plaintiff had previously filed a notice of appeal from the order of July 9, 1991 which had resolved that very same issue. Thus, simply stated, the issue before us is whether or not the trial court actually had jurisdiction to entertain defendant's motion and plaintiff's cross-motion in this regard.
Rule 2:9-1(a), which addresses control of proceedings on appeal prior to disposition, states:
Except as otherwise provided by R. 2:9-3, 2:9-4 (bail), 2:9-5 (stay pending appeal), 2:9-7 and 3:21-10(d), the supervision and control of the proceedings on appeal or certification shall be in the appellate court from the time the appeal is taken or the notice of petition for certification filed. The trial court, however, shall have continuing jurisdiction to enforce judgments and orders pursuant to R. 1:10 and as otherwise provided. The appellate court may at any time entertain a motion for directions to the court or courts or agencies below or to modify or vacate any order made by such court or agencies or by any judge below. [Emphasis added].
Thus, "[e]xcept to the extent of enforcement and except as otherwise expressly provided for by rule, the ordinary effect of the filing of the notice of appeal is to deprive the court below of jurisdiction to act further in the matter unless directed to do so by the appellate court." Pressler, Current N.J. Court Rules, comment 1 on R. 2:9-1 (1993). See Morrison v. Morrison, 93 N.J. Super. 96, 100, 225 A.2d 19 (Ch.Div. 1966) ("There is language in the cases which seems to indicate that once an appeal is taken, the [trial] court is divested of jurisdiction except as reserved by statute or rule."). See also Kohn's Bakery, Inc. v. Terracciano, 147 N.J. Super. 582, 583-84, 371 A.2d 789 (App.Div. 1977) (plaintiff's action in filing notice of appeal from the dismissal of its complaint deprived the trial court of jurisdiction to hear plaintiff's application for reconsideration); *366 Sturdivant v. General Brass & Machine Corp., 115 N.J. Super. 224, 227, 279 A.2d 110 (App.Div.), certif. denied, 59 N.J. 363, 283 A.2d 107 (1971) (in Workers' Compensation case, "[w]hen respondent filed its notice of appeal, the [c]ounty [c]ourt lost jurisdiction in the matter since the supervision and control of the proceedings on appeal rested with the Appellate Division."). Thus, in the matrimonial context, any modification orders entered by the trial court while the appeal of a matter is pending are void. Indeed, in Neger v. Neger, our Supreme Court, in a footnote, declared:
There has been brought to our attention a series of five orders dated September 17, 1982 and an order dated November 18, 1982 affecting the custody of Carly and modifying the California decrees entered by a different judge sitting in the Chancery Division. The defendant filed her appeal on September 13, 1982 and those orders entered thereafter are questionable. See R. 2:9-1(a). In view of our order and decision herein, the aforesaid trial court's orders are of no effect. [93 N.J. 15, 38 n. 11, 459 A.2d 628 (1983)].
Cf. Stern v. Stern, 196 N.J. Super. 540, 544, 483 A.2d 814 (App.Div. 1984) (impliedly upholding trial court's conclusion that it was without jurisdiction to act on request to vacate order and reenter it on a current basis, because timely notice of appeal had been filed).
The foregoing analysis makes it clear that the trial court lost jurisdiction to make the changed circumstances determination with regard to defendant's Lepis motion after plaintiff and defendant filed their appeal and cross-appeal, respectively, from the July 1991 order. However, rather than reversing and remanding for a new hearing, the goals of judicial economy and the interests of justice would best be served by granting a limited remand nunc pro tunc to the date of the October 25, 1991 hearing on the motion, so that the trial court would have had jurisdiction to decide the issue of changed circumstances as it related to alimony, and to entertain plaintiff's cross-motion for escalation clause payments. Accordingly, the order for a limited remand nunc pro tunc is hereby granted.
We are satisfied from our study of the record and the arguments presented with respect to the orders of November 7, *367 1991 and December 6, 1991, that the trial court properly exercised its discretion when it directed defendant to pay plaintiff moneys attributable to the bonus payment escalation clause for 1984 and 1985, and properly denied defendant's motion for reconsideration. Moreover, all of the issues of law raised with respect to these orders are clearly without merit. R. 2:11-3(e)(1)(E). Accordingly, the orders of November 7, 1991 and December 6, 1991 are affirmed substantially for the reasons expressed by Judge Lintner in his oral opinions of October 25, 1991 and December 6, 1991, respectively.

III.

Summary
Except to remand the matter to the trial court for consideration of (1) plaintiff's claim that defendant failed to fully disclose and report his income and (2) the effect that this alleged failure may have had upon plaintiff's right to bonus payments under the separation agreement, the orders under review are affirmed. We do not retain jurisdiction.
NOTES
[1] Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980).